Filed 10/3/13  In re J.S. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | B246727 (Los Angeles County Super. Ct. No. CK81873) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>APRIL S.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Truong, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Sarah Vesecky, Deputy County Counsel for Plaintiff and Respondent.

J.S. was adjudged a dependent of the juvenile court. Pursuant to Welfare and Institutions Code, section 366.26, subdivision (c)(1),[1] the court terminated the parental rights of her mother April S. (mother) and ordered J.S. placed for adoption. Mother contends the court's order was erroneous because there existed two statutory exceptions to the requirement that the juvenile court order adoption: (1) mother has a beneficial relationship with J.S. (§ 366.26, subd. (c)(1)(B)(i)); and (2) adoption would substantially interfere with the child's relationship with her siblings (§ 366.26, subd. (c)(1)(B)(v)). We hold the juvenile court properly found neither exception applicable and affirm the court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mother and Michael S. (father) are the parents of J.S., born in October, 2009. Mother and Michael H. are the parents of Leslie (13), Michael (11), James (9), and Sean (7).

On April 15, 2010, the Department of Children and Family Services (DCFS) filed a petition pursuant to section 300, subdivisions (a), (b), (g), and (j) regarding the minors. On May 17, 2010, Michael H. pled no contest to a count alleging his children were at risk as a result of his inability to provide them with the necessities of life. On August 11, 2010, mother and father pled no contest to an amended petition alleging: father inappropriately physically disciplined J.S.'s siblings; mother and father engaged in physical altercations in the children's presence; mother did not protect the children from father; father abused alcohol in the children's home; and the parents' conduct put J.S. and her siblings at risk of harm. The juvenile court sustained the amended petition, declared the children dependents of the court, removed them from their parents' custody, and ordered them suitably placed. All five children were placed with Michael H.'s mother,

---

[1] All further statutory references are to the Welfare and Institutions Code.

Loretta C., and her husband Cesar M., with whom they had resided for the past three years. The court also ordered visitation and family reunification services.

At the status review hearings conducted during 2010 and 2011, the juvenile court found mother was in partial compliance with her case plan. Though mother had completed a parenting class, her visits with J.S. were inconsistent as was her attendance at domestic violence counseling. Father had been arrested in September 2011 for warrants related to domestic violence and driving under the influence of alcohol. At the contested 12-month review hearing held pursuant to section 366.22, subdivision (a) on November 22, 2011, the court terminated reunification services, stating it did not believe mother or father "had made any progress in the case. None whatsoever." The court concluded mother had "no idea what domestic violence is all about." The court indicated the permanent plan for J.S. was adoption by Loretta C., and set the section 366.26 hearing for March 20, 2012.

On that date, the court continued the hearing in order for DCFS to interview Leslie, Michael and James regarding their views about being adopted. During a subsequent interview, Leslie (who was then 12 years old) indicated she wanted to remain with her caregivers, but not be adopted.

After additional continuances, the contested section 366.26 hearing was held on November 5, 2012. Mother testified[2] she and the children had a close bond and said she would feel "really bad" if her parental rights were terminated. Mother attributed her inconsistent visits to her work schedule. Mother testified she prepared meals for J.S. at a friend's home and brought the food to her visits. Mother also stated she and J.S. engaged in preschool activities and that she was responsible for disciplining the child during the visits.

The remainder of the evidence presented at this hearing consisted principally of Leslie's testimony concerning her ambivalence about being adopted by her grandmother.

---

[2] Although the hearing concerned all five minors, we only recount the testimony relevant to J.S., as this appeal is limited to termination of mother's parental rights to J.S.

3

Leslie also testified that she loved J.S., and it would make her sad if J.S. were no longer legally her sister because she "[would not] be able to play with her."

In closing arguments, father's attorney objected to J.S. being adopted: "We'd ask the court to find an exception applies for the child Leslie and that, as a result of that, that there's an exception for all of the children through a sibling exception [and] that [J.S.] should not be adopted because she does have a relationship with Leslie, as Leslie testified to. So we'd ask the court not to terminate parental rights today." Mother's counsel joined in father's counsel's arguments.

The court stated: "With regards to Leslie, Michael, James, and Sean, I do find that it would be detrimental for this court to terminate parental rights of those children." The court continued the older children's case so that DCFS could address legal guardianship with Kin-Gap. The court then turned to J.S., stating: "[J.S.] is the one that I am having difficulty with. I do believe that -- well, I do not believe that the (c)(1)(B)(i) exception applies to [J.S.]. Neither parent has ever, as far as I can tell, parented, really parented [J.S.]. [¶] The issue I have is the sibling exception, but I also don't find that there would be a substantial interference, which is what I would have to find in order for this court to find a sibling exception to this case. The children are all residing with the same caregiver. They have resided with the same caregivers throughout the pendency of this case. And as a result, I just do not have sufficient evidence before me to either find detriment if I were to terminate parental rights over her or that there would be a sibling exception in this case." The court continued the case to permit DCFS to explore Loretta C. and Cesar M. views on adopting J.S. while taking legal guardianship of the other four minors.

At the continued hearing on January 17, 2013, father's counsel reiterated his client's objection to the termination of parental rights and asked the court to find that there was an exception to adoption. Mother's counsel stated, "mother also objects to the adoption of [J.S.] and would ask the court to find that there is a sibling exception." The court determined no exception to adoption was demonstrated and terminated mother's and father's parental rights to J.S.

4

Mother timely appealed the order.

## II.  STANDARD OF REVIEW

The Sixth District Court of Appeal in *In re Bailey J.* (2010) 189 Cal.App.4th 1308, discussed the split of authority concerning the standard of review applicable to a juvenile court's ruling on whether an exception to termination of parental rights under section 366.26, subdivision (c)(1)(B) applies in a given case.  "In *In re Jasmine D.* (2000) 78 Cal.App.4th 1339 (*Jasmine*), the First District Court of Appeal acknowledged that most courts had applied the substantial evidence standard of review to this determination. [Citation.]  However, the First District concluded that the abuse of discretion standard of review was 'a better fit' because the juvenile court was obligated to make 'a quintessentially discretionary determination.'  [Citations.]"  (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.)

"In our view, both standards of review come into play in evaluating a challenge to a juvenile court's determination as to whether the parental or sibling relationship exception to adoption applies in a particular case.  Since the proponent of the exception bears the burden of producing evidence of the existence of a beneficial parental or sibling relationship, which is a factual issue, the substantial evidence standard of review is the appropriate one to apply to this component of the juvenile court's determination.  Thus, as this court noted in *In re I.W.* (2009) 180 Cal.App.4th 1517, a challenge to a juvenile court's finding that there is no beneficial relationship amounts to a contention that the 'undisputed facts lead to only one conclusion.'  (*In re I.W.,* [*supra,* 180 Cal.App.4th] at p. 1529.)  Unless the undisputed facts established the existence of a beneficial parental or sibling relationship, a substantial evidence challenge to this component of the juvenile court's determination cannot succeed."  (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.)

"The same is not true as to the other component of these adoption exceptions.  The other component of both the parental relationship exception and the sibling relationship

5

exception is the requirement that the juvenile court find that the existence of that relationship constitutes a '*compelling reason* for determining that termination would be detrimental.' (§ 366.26, subd. (c)(1)(B), italics added.) A juvenile court finding that the relationship is a 'compelling reason' for finding detriment to the child is *based* on the facts but is not primarily a factual issue. It is, instead, a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption. [Citation.] Because this component of the juvenile court's decision is discretionary, the abuse of discretion standard of review applies." (*In re Bailey J., supra,* 189 Cal.App.4th at p. 1315.)

Our colleagues in Division Seven of this Court found persuasive *In re Bailey J.*'s approach to reviewing the parental relationship and sibling exceptions to adoption set forth in section 366.26, subdivision (c)(1)(B). (*In re K.P.* (2012) 203 Cal.App.4th 614, 621-622.) We do as well and apply this mixed standard of review here.

## III. DISCUSSION

"Adoption must be selected as the permanent plan for an adoptable child and parental rights terminated unless the court finds 'a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship. [¶] . . . [¶] (v) There would be substantial interference with a child's sibling relationship . . . .' (§ 366.26, subd. (c)(1)(B).)" (*In re Bailey J.*, *supra*, 189 Cal.App.4th at p. 1314.) Under these provisions, "the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child. The specified statutory circumstances—actually, *exceptions* to the general rule

6

that the court must choose adoption where possible—'must be considered in view of the legislative preference for adoption when reunification efforts have failed.' [Citation.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) "'Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker.' [Citation.]" (*Ibid.*)

The parent has the burden of establishing a statutory exception to adoption applies. (*In re Bailey J., supra,* 189 Cal.App.4th at p. 1314; Cal. Rules of Court, rule 5.725(d)(4).) The burden of proof is preponderance of the evidence. (*In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 449.)

### 1. Beneficial Relationship Exception

To prove that the beneficial relationship exception applies, "the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits—the parent must show that he or she occupies a parental role in the life of the child. [Citation.]" (*In re I.W., supra,* 180 Cal.App.4th at p. 1527.) Moreover, it is not enough simply to show "some benefit to the child from a continued relationship with the parent, or some detriment from termination of parental rights." (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1349.) There must be a significant, positive emotional attachment between parent and child. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418–1419.)

Even where such an attachment exists, it does not bar adoption if the child looks to a prospective adoptive parent to meet her needs. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 811.) The parent must prove that the parental relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) "In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer." (*Ibid.*) "'When the benefits from a stable and permanent home provided by adoption outweigh the benefits from a continued

7

parent/child relationship, the court should order adoption.'" (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1350; *In re Autumn H., supra,* 27 Cal.App.4th at p. 575.) Factors courts consider in determining the applicability of the parental relationship exception include: (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of interaction between the parent and the child, and (4) the child's particular needs. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467; *In re Autumn H., supra,* 27 Cal.App.4th at p. 576.) "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1350.)

Mother did not assert in the juvenile court that the beneficial parent relationship exception precluded J.S.'s adoption. Rather, she relied solely on the sibling exception to argue against termination of her parental rights. She therefore forfeited the right to raise the beneficial relationship issue on appeal. (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 603 [appellant cannot complain that trial court failed to do that which it was not asked to do].) In any event, even if the issue were not waived, the evidence clearly demonstrates mother failed to carry her burden of establishing the applicability of the exception in this case.

Mother acknowledges her visitation with J.S. was not consistent, but maintains "there were reasons for her inability to maintain a consistent visitation schedule," and states "in the context of her limitations, [mother] had regular visits and contact with [J.S.]." To prove the existence of a beneficial parental relationship, mother cites her testimony that there was a close bond between her children and herself, and that the DCFS reported she was appropriate with J.S. during their visits and there was no evidence that the visits negatively affected J.S. Mother fails to mention the social worker's report prepared for the section 366.26 hearing, which noted J.S. was "indifferent" to visits with mother, and did not cry or otherwise object when they came to an end. As noted above, a challenge to the juvenile court's finding of no beneficial

8

relationship amounts to a contention that the undisputed facts lead only to the conclusion that such a relationship existed. (*In re I.W., supra,* 180 Cal.App.4th at p. 1529.) That cannot be said of the evidence presented here. In short, substantial evidence supports the juvenile court's finding that mother and J.S. did not share the beneficial relationship contemplated by section 366.26, subdivision (c)(1)(B)(i).

## 2. Sibling Relationship Exception

Section 366.26 provides for an exception to termination of parental rights if it would result in a "substantial interference with a child's sibling relationship, taking into consideration . . . whether ongoing contact is in the child's best interest, . . ." (§ 366.26, (c)(1)(B)(v).) "If the court determines terminating parental rights would substantially interfere with the sibling relationship the court is then directed to weigh the child's best interest in continuing that sibling relationship against the benefit the child would receive by the permanency of adoption. [Citation.]" (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952.) "When considering the sibling relationship exception, the concern is the best interests of the child being considered for adoption, not the interests of that child's siblings." (*In re Naomi P.* (2005) 132 Cal.App.4th 808, 822.) "[T]he application of [the sibling relationship exception] will be *rare,* particularly when the proceedings concern young children whose needs for a competent, caring and stable parent are paramount." (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1014, italics added.)

Here, J.S. and her four siblings had lived together and would remain in the same home even if J.S. but not her siblings were adopted by Loretta C. and Cesar M. Thus, as the juvenile court concluded, there was no risk of substantial interference with the sibling relationship on account of J.S.'s adoption. The juvenile court's factual finding to that effect is supported by substantial evidence.

9

## IV.  DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KUMAR, J.[*]


We concur:



MOSK, Acting P. J.



KRIEGLER, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.